UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRANSILWRAP COMPANY, INC. and BRUSHFOIL INC., <br><br> *Plaintiff,* <br><br> v. <br><br> METAL FX FILMS, LLC, JAMES PARKER, and CHARLES YETKA., <br><br> *Defendants.* | Civil Action No. 14-cv-04205 (PGS) <br><br> **REDACTED** <br> **MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff, Transilwrap Company, Inc.'s ("Transilwrap") Order to Show Cause why a preliminary injunction against Metal FX Films, LLC ("Metal FX") and its principals should not issue. (ECF No. 23). The parties have briefed the issue, and oral argument was held before this Court on September 17, 2014.

In October, 2007, Defendants James Parker ("Parker") and Charles Yetka ("Yetka") sold their business, Brushfoil, LLC., (hereinafter "Brushfoil"), including intellectual property belonging to Brushfoil, to Interfilm for $9 million. The Asset Purchase Agreement for that sale contained a non-compete provision that expired on October 1, 2012. At the time of sale, Interfilm agreed to employ Parker and Yetka pursuant to a two-year Employment Agreement ("Agreement") wherein certain information was considered to be a trade secret[1]. The employment contract and the confidentiality provision have now terminated. In 2013, Interfilm sold Brushfoil to Transilwrap. In 2014, Parker and Yetka formed a new company, Metal FX, to compete with Transilwrap's business.

---

[1] This Agreement was assigned to Transilwrap on September 24, 2014, nearly four years after the sale of Brushfoil to Transilwrap and one week after the hearing on this motion for preliminary injunction.

Obviously, Transilwrap argues that the creation of Metal FX violates the provision of the agreements that were made at the time of sale to Interfilm, and therefore an injunction should issue.

For the following reasons, the Court denies the application for a preliminary injunction.

The standard for a preliminary injunction requires the plaintiff to establish the following four elements: 1) the plaintiff is likely to succeed on the merits; 2) denying the injunction will result in irreparable harm to the plaintiff; 3) granting the injunction will not result in greater harm to the defendant; and 4) the injunction is in the public interest. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002). Courts have noted that a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2948, at 129-130 (2d ed. 1995)). Additionally, the Supreme Court has held that "[a] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 375 (U.S. 2008). Furthermore, a preliminary injunction may not be issued where there are disputed issues of fact. *Gruntal & Co. v. Steinberg*, 843 F. Supp. 1, 15 (D.N.J. 1994). It is important to keep this high standard in mind in the analysis of each element of the test for granting an injunction. Here, there are substantial facts in dispute which demonstrate that Plaintiff does not meet the first factor -- the likelihood of success on the merits. The disputed facts are:

1) Plaintiff claims that Parker and Yetka used a trade secret by sketching the layout of a brushing machine process on one sheet of graph paper, and that the sketched layout was the same as the one used by Brushfoil. Most notably, Plaintiff claims that the drawing is an exact replica of Brushfoil's machine and process. Defendants disagree and argue that they retained the firm of McGuchin & Pyle, Inc. to design and build their web process machine to be used by Metal FX. They acknowledge sketching a layout of the process from memory, but argue that the sketch did not

provide any specifications or detailed schematics; hence it was not a replica. Moreover, Defendants' expert, Timothy Walker, a web handling machine engineer, opined that such equipment is not unique or proprietary to Brushfoil. (Walker Declaration ¶¶ 2-3, 24-25). In fact, according to Walker, the web processing equipment is common in many industries. Hence, there is a disputed fact as to whether the web processing machine is a trade secret;

    2)    Plaintiffs claim that the web handling processing machine is exactly the same for its process (Brushfoil) and that of defendant Metal FX. This fact, is also in dispute. Defendants claim the following differences between the two web machine processes:



Again, these differences show there is a disputed issue as to whether the equipment is the same.

    3)    Plaintiff claims the use of all information acquired from Brushfoil is confidential and in breach of their employment agreement. Parker and Yetka assert that they never agreed to same. Instead, Parker and Yetka contend they are barred from using confidential business information acquired when working at Interfilm, but previously acquired information while they owned Brushfoil was not part of the agreement. Moreover, Parker and Yetka contend Metal FX only uses information acquired when Parker and Yetka owned Brushfoil. As such, all the knowledge that had been acquired by Defendants before the sale of Brushfoil is not considered confidential. Donald E. Thompson, the former owner of Interfilm, acknowledges same. He states in pertinent part of his declaration:

> In negotiating the purchase and agreeing to the terms of the deal, I recognized that Parker and Yetka had been running the business for a period of time and that they had substantial knowledge of customers, vendors, manufacturing processes and other information that was potentially valuable. I wanted them to continue as employees for a transitional period after the purchase, so as a condition of the deal, I agreed to employ them for a period of time after the closing. I also wanted to be sure that after paying them a substantial amount of money for the assets of Brushfoil, they would not quit abruptly and start a competitive business. I also knew, however, that I could not ask or cause them to forget everything that they already knew about the business or the industry, and that there would come a time when they could potentially compete with Interfilm. Therefore, I structured the deal to provide for protections that would last for a certain period of time.
>
> * * *

> The employment agreements provided further that Parker and Yetka would not use for their benefit or for the benefit of a competing business any confidential information that they received from Interfilm or which they learned in the course of their employment with Interfilm. The confidentiality provision in the employment agreements specifically applies only to information "which may come to Employee's knowledge or be obtained by him during his employment" with Interfilm.

(Thompson Dec., ¶ 5, 7). As such, whether any information acquired by Parker and Yetka before the sale of Brushfoil to Interfilm constitutes confidential information is a disputed fact.

In light of these three major disputes in fact, the likelihood of success on the merits is not met, and, as such, a preliminary injunction is denied.

## ORDER

This matter is before the Court on Plaintiffs, Transilwrap Company, Inc.'s motion for a preliminary injunction (ECF No. 23); and the Court having held oral argument and reviewed the briefs of the parties; and for good cause shown;

IT IS on this 22nd day of October, 2014;

ORDERED that Plaintiff's motion for issuance of a preliminary injunction is denied.

_____
PETER G. SHERIDAN, U.S.D.J.